UNITED STATES DISTRICT COURT
SOURTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 11-cv-23103-MGC

EUROSILLAS, C.A., a foreign corporation,
BARAKA DE VENEZUELA, C.A., a
foreign corporation and NAJAH AL-RIMAWI
DE YUSSEF,

       Plaintiffs,

v.

CITIGROUP, INC. and CITIBANK, N.A.,

       Defendants.

_____/

**DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO JOIN NECESSARY
PARTY, FOR FAILURE TO STATE A CLAIM, FOR MORE DEFINITE
STATEMENT, AND TO STRIKE REQUEST FOR
ATTORNEYS' FEES AND ACCOMPANYING MEMORANDUM OF LAW**

       Defendants Citigroup, Inc. ("Citigroup") and Citibank, N.A. ("Citibank"), pursuant to

Federal Rules of Civil Procedure 12(b)(6),(7), 12(e), 12(f) and Southern District of Florida Local

Rule 7.1, move to dismiss all claims asserted against them in the Complaint for Declaratory

Relief, Injunctive Relief, and Damages [DE 1, Ex. A, B] filed by Plaintiffs Eurosillas, C.A.

("Eurosillas"), Baraka De Venezuela, C.A. ("Baraka"), and Najah Al-Rimawi De Yussef ("Al-

Rimawi") for failure to join a necessary party and failure to state a claim upon which relief can

be granted, for a more definite statement, and to strike Plaintiffs' request for attorneys' fees.

       This motion should be granted for the reasons set forth in the incorporated memorandum

of law.

## MEMORANDUM OF LAW

## INTRODUCTION

Plaintiffs sue Defendants arising out of their claims that Citibank improperly denied Plaintiff Al-Rimawi access to Citibank corporate accounts held by Plaintiff companies, Baraka and Eurosillas.  Plaintiffs assert that only Al-Rimawi has authority over the Citibank accounts, despite the fact that Citibank's account records reflect that Al-Rimawi's estranged husband, Hasem Yussef, currently is the *only* signatory on the accounts, and that Yussef is an owner and officer in both companies.  Plaintiffs know this, yet demand an adjudication as to Al-Rimawi's authority over the accounts in Yussef's absence – notwithstanding his obvious interest in the accounts as a signatory and owner and officer of the account holders.  This Court cannot proceed without Mr. Yussef, as he is a necessary party to this action.

Although Plaintiff companies hold accounts with Defendant Citibank – *not Defendant Citigroup* – Plaintiffs improperly join Citibank's parent company, Citigroup, as a defendant. Plaintiffs plead no basis that would explain *why* they have sued Citigroup or even on *what grounds*.  Plaintiffs literally make no allegations whatsoever as to Citigroup beyond the opening paragraph of their Complaint.  Plaintiffs' claims against Citigroup must be dismissed.

Aside from Plaintiffs' failure to join a necessary party and their misjoinder of Citigroup, Plaintiffs fail to state any plausible claims against Citi upon which relief may be granted because Plaintiffs have alleged no plausible basis to establish that a fiduciary relationship existed between the Plaintiff account-holders and Citibank.

The claims of Plaintiff Al-Rimawi, who is <u>not an account holder</u> and who has failed to allege any direct relationship with Citibank, are particularly troublesome given the lack of any legal or factual grounds alleged in support of such claims.  Plaintiffs' Complaint should be

dismissed in its entirety.

Plaintiffs' most egregious demand lies in its "wherefore" clauses.  There, Plaintiffs seek Section 57.105, Florida Statute sanctions against Citi for its purported filing of unsupported claims or defenses – yet Citi had not pled a response to the Complaint (until now).  Nor did Plaintiffs serve Citi with a motion for sanctions or any other such notice of its intent to seek sanctions, in direct violation of the statute's 21-day safe harbor requirement.  See § 57.105(4), Fla. Stat.  Plaintiffs' demand for sanctions is premature, unwarranted, and brought solely for the purpose of harassment.  It should be stricken.

## ALLEGATIONS OF THE COMPLAINT

Plaintiffs allege that Eurosillas holds a Citibank corporate/business account (account number 9115137834) opened and/or serviced in the Citibank branch in Doral, Florida, and that Plaintiff Al-Rimawi is the President, co-founder, and 50% shareholder of Eurosillas.  Compl. ¶¶ 8-9.[1]  Plaintiffs similarly allege that Baraka holds a Citibank corporate/business account (account no. 3200343104), also opened and/or serviced by the Citibank branch in Doral, Florida, and that Al-Rimawi is a shareholder and officer/director of Baraka.  Compl. ¶¶ 10-11.

Plaintiffs allege that until May 2011, Al-Rimawi was a duly authorized signatory on both the Eurosillas and Baraka Citibank accounts (the "Accounts"), and that in late May 2011, she learned that she had been removed as an authorized signatory from the Accounts, "precipitated by the former President of Eurosillas who is also her estranged husband, Hasem Yussef Yussef and/or his family."  Compl. ¶¶ 12-14.  Plaintiffs further allege that, despite efforts to inform Citibank that Al-Rimawi allegedly was the only individual with the legal authority to access and sign on the Accounts or to freeze them, that Citibank ignored her requests, including letters to the

---

[1] Account records, however, reflect that Yussef is 100% owner.  See Aff. of Marcia Cleary ¶ 10 (Exhibit A), infra.

bank from her attorneys. Compl. ¶¶ 14, 16-18, Ex. C-D.

Plaintiffs then allege that on June 29, 2011, Citibank agreed to "freeze" the Accounts, but did not agree to allow Al-Rimawi access to them.  Compl. ¶ 19.  In Plaintiffs' Ex. E to the Complaint, a Citibank representative, Eleck McMurphy, on June 29, 2011, wrote Plaintiffs' counsel: "We are aware of an ongoing dispute regarding the account you and I discussed at our Doral branch. . . **This account [Eurosillas] has been blocked.  It will remain blocked** until we receive notice of an agreement between the parties as to the release of the funds, or we receive a court order directing us to release the funds.  (Emphasis added)."  Ms. McMurphy also wrote: "I can confirm that **account number 3200343104 [Baraka] has also been blocked**."  Compl. ¶ 19, Ex. E (emphasis added).

Despite this allegation, which appears on the face of the Complaint, Plaintiffs claim that they have no adequate remedy at law and are being irreparably harmed, "as the funds at issue are at risking of being improperly transferred, dissipated, and/or removed from the jurisdiction," and/or that "Plaintiff corporations are being denied access to the funds in their respective accounts," causing them to "suffer damages to their goodwill and reputations in the business community."  Compl. ¶ 20.

Plaintiffs make no factual allegations whatsoever as to any alleged conduct on the part of Defendant Citigroup.

Plaintiffs allege the following five causes of action against Defendants in their Complaint:

- Count I for Constructive Trust
- Count II for Injunction
- Count III for Breach of Fiduciary Duty
- Count IV for Declaratory Relief
- Count V for Accounting

Count II for Injunction (as well as Plaintiffs' Verified Motion for Temporary Injunction and/or Temporary Restraining Order, [DE 1, Ex. C]) is moot on account of the parties' Joint Motion for Entry of an Agreed Order Suspending All Activity regarding Plaintiffs Citibank *Accounts*, filed on September 8, 2011, [DE 7].  However, Citi reserves its right to seek dismissal of Count II in the event that Plaintiffs renew or refile their request for an injunction against Defendants.

In Counts I, II, and IV, Plaintiffs further seek attorney's fees pursuant to Section 57.105, Florida Statutes.

### HASEM YUSSEF IS A SIGNATORY ON THE ACCOUNTS AND IS A CO-OWNER IN PLAINTIFF COMPANIES

#### The Baraka Account

The documents submitted by Yussef and Al-Rimawi in connection with opening of the Baraka account (including Baraka corporate records and the General Deposit Resolution) identify Yussef as the **80% owner** and **President**, and Al-Rimawi is the 20% owner and Vice President of Baraka.  See id. ¶¶ 5-6.

Also according to the Citibank account records of Baraka, **both** Yussef and Al-Rimawi were at all times, until on or around June 14, 2011, signatories on the Citibank Baraka account. See Cleary Aff. ¶ 7.[2]  On or around June 14, 2011, Al-Rimawi was removed as a signatory on the Baraka account, pursuant to the request of Baraka President, Yussef, dated May 13, 2011.  See id. at ¶ 8.

---

[2] The Affidavit of Marcia Cleary, Citibank Relationship Manager, outlining Yussef's legal interest in the Accounts, is attached hereto as Exhibit A. On a motion to dismiss for failure to join a necessary party, the defendant may satisfy the burden of showing the nature of the interest possessed by the absent party, and that the party's absence will impair the protection of that interest, by providing affidavits of persons having knowledge of those interests, as well as other relevant extra-pleading evidence.  See e.g. Kemp v U.S., 131 FRD 212 (N.D. GA 1990) (before determining wife's interest in tax overpayment, court concluded she was entitled to contest plaintiff's affidavit); Wright & Miller, 7 Fed. Prac. & Proc. Civ. § 1609 (3d ed.).

### The Eurosillas Account

The documents that were submitted to Citibank in connection with the opening of the Eurosillas account (including Eurosilla corporate records and the General Deposit Resolution) identify Yussef as **100% owner** and the **President** of Eurosillas.  See id. ¶¶ 11-12.

Similarly, Citibank account records of Eurosillas show that, from or around March 2, 2009, until on or around June 14, 2011, **both** Yussef and Al-Rimawi were signatories on the Citibank Eurosillas account.  See Cleary Aff. ¶ 12.  On or around June 14, 2011, Al-Rimawi was removed as a signatory on the Eurosillas account, pursuant to the request of Eurosillas President, Yussef, dated May 13, 2011.  See id. ¶13.

### ARGUMENT

### I.    PLAINTIFFS FAILED TO JOIN YUSSEF, A NECESSARY PARTY

Federal Rule of Civil Procedure 19(a) provides, in relevant part:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

The purpose of Rule 19 is "to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources."  Moore v. Ashland Oil, Inc., 901 F.2d 1445, 1447 (7th Cir. 1990).  To that end, Rule 19 sets forth a two-part analysis.  First, the court must determine whether the person in question is a "necessary" party and should be joined.  A party is considered "necessary" to the action if the court determines either that complete relief cannot be granted with the present parties or the absent

party has an interest in the disposition of the current proceedings.  <u>See</u> Fed. R. Civ. P. 19(b); <u>Laker Airways, Inc. v. British Airways, PLC</u>, 182 F.3d 843, 847 (11th Cir. 1999) (affirming dismissal for failure to join necessary party) (citation omitted).

  If the person should be joined, but for some reason cannot be, the court must analyze the factors outlined in Rule 19(b) to determine whether "in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person thus regarded as indispensable." <u>Id.</u>; <u>Fireman v. Travelers Cas. & Sur. Co.</u>, Case No. 10-81564-CIV, 2011 WL 743069 (S.D. Fla. 2011) (dismissal granted for failure to join necessary party); <u>Kernel Records Oy v. Mosley</u>, 09-21597-CIV-TORRES, 2010 WL 2812565 (S.D. Fla. 2010) (court deemed copyright owner a necessary party).

  Plaintiffs allege that "the parties have an actual, justifiable controversy as to who has authority over the aforementioned accounts." Compl. ¶ 36.  Yet, despite Plaintiffs' repeated allegations that Al-Rimawi is the "only individual with legal authority to access and sign on" the Accounts, Compl. ¶¶ 13, 18, and that she is the only "rightful owner" of the funds in the Accounts, Compl. ¶ 26, Plaintiffs fail to mention that Al-Rimawi's spouse, Yussef, also was a signatory on and an owner of the Accounts at all times material to this lawsuit.  <u>See</u> Cleary Aff ¶¶ 7, 12.  Indeed, as of June 14, 2011, Yussef in fact is the *only* signatory on the Accounts.  <u>See</u> <u>id.</u> at ¶¶ 8, 13.

  Plaintiffs further fail to inform this Court that Al-Rimawi and Yussef currently are separated and possibly in the midst of a marital dispute, which may include questions and resulting adjudications as to their respective ownership interests in and authority over the Accounts.  <u>See</u> <u>id</u>. ¶ 14.  Indeed, documents that Al-Rimawi and Yussef submitted to Citibank reflect that Yussef is an owner in and officer of both Baraka and Eurosillas, as well as presently

the sole signatory on both Accounts.  See id. ¶¶ 5-7, 10-12.

Proceeding with this litigation in Yussef's absence would inevitably "impede [his] ability to protect [his] interest" in the Accounts, whether Plaintiffs have acknowledged them or not in their pleading.  Moreover, Plaintiffs themselves are unable to obtain complete relief without the joinder of Yussef because Yussef will not be bound by any decision in this case, and Citi and Plaintiffs will therefore be subjected to the potential of duplicative litigation over the same alleged loss if the action proceeds in his absence.  See Fed. R. Civ. P. 19(a)(i), (ii).

Federal courts have agreed that joint owners of financial accounts are in fact necessary parties to disputes over ownership interests in such accounts.  See e.g. Shelley v. Noffsinger, 91 F.R.D. 263, 266 (N.D. Ill. 1981) (plaintiff's brother-in-law was a necessary party in case regarding joint stockbroker's account). Indeed, it is well established under Rule 19 that "all claimants to a fund must be joined to determine the disposition of that fund."  Webster Bus. Credit Corp. v. Henricks Jewelry, Inc., 207-CV-601-FTM-29DNF, 2008 WL 2222203, *2 (M.D. Fla. 2008) (dismissal for non-joinder of indispensable party who had an interest in the funds but who could not be joined) (citation omitted); Fireman v. Travelers Cas. & Sur. Co. of Am., 10-81564-CIV, 2011 WL 743069, *4 (S.D. Fla. 2011) (named insured was a necessary party to the reformation claim).

Similarly, joint stakeholders in a business enterprise also have been deemed necessary parties (or indispensable if such parties are unable to be joined).  Cross Timbers Oil Co. v. Rosel Energy, Inc., 167 F.R.D. 457, 460 (D. Kan. 1996) ("when multiple parties claim ownership interests in the same property ... all potential claimants must be joined to provide complete relief and protect the interests of the absent parties).

As the sole **signatory** on the Accounts, and **owner** and **President** of Plaintiff companies

Eurosillas and Baraka, Plaintiffs' continued prosecution of its case against Defendants – particularly in light of the potential marital dispute between the spouses[3] – will invariably impede Yussef's ability to protect his ownership interest in the Accounts and, in turn, the Plaintiff companies, and leave Citi at risk of a similar future lawsuit brought by Yussef.  Indeed, non-dismissal of this action in Yussef's absence would entirely defeat the purpose of Rule 19 altogether – "to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources."  <u>Ashland Oil</u>, 901 F.2d 1445, 1447.

Plaintiffs themselves cannot obtain an adjudication "as to who has authority over the aforementioned accounts," Compl.¶ 36, in Yussef's absence, given his clear interest in the Accounts.

Finally, Defendants believe that Yussef can be joined in this case.  The dispute involves the adjudication of the rights of a Florida account and thus, at least, this Court has quasi-in-rem jurisdiction over Yussef.  The Court's subject matter jurisdiction is premised on the Edge Act, 12 U.S.C. § 611 <u>et seq</u>., and thus, sYussef's joinder will not defeat jurisdiction.

## II.     PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF

Plaintiffs' Complaint also fails to meet federal pleading requirements.

The U.S. Supreme Court has given specific guidance on the pleading standard required under Rule 8.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to

---

[3] To the extent a judicial action arises, or already is ongoing, between Al-Rimawi and Yussef that involves or will impact their respective ownership interests in the Accounts and the assets of the Plaintiff companies, Defendants reserve their right to seek a stay of this proceeding pending a final adjudication of the rights of Al-Rimawi and Yussef, which as a practical matter may render Plaintiffs' claims to the Accounts as moot.

relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 566; Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (citing Twombly). Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 129 S. Ct. at 1950 (citing Twombly, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950 (citations omitted). Importantly, however, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." Id. (internal citations and quotations omitted).

Here, none of the claims sued upon asserts a plausible claim for relief.

## A. PLAINTIFFS' CLAIMS AGAINST CITIGROUP SHOULD BE DISMISSED, OR ALTERNATIVELY, CITIGROUP IS ENTITLED TO A MORE DEFINITE STATEMENT

Plaintiffs have sued both Citibank and Citigroup, although by Plaintiffs' own admission, Plaintiff companies Baraka and Eurosillas are account holders at **Citibank**, *not* Citigroup, and therefore have a direct banking relationship only with Citibank. See Compl. ¶¶ 8, 10. Thus, all of Plaintiffs' allegations as to "Defendants'" conduct, as well as Plaintiffs' demands, solely pertain to Citibank:

- "Eurosillas is a Venezuelan corporation with a **Citibank corporate/business account**." Compl. ¶ 8.
- "Baraka is a Venezuelan corporation with a **Citibank corporate/business account**." Compl. ¶ 10.
- "Until May, 2011, Ms. Al-Rimawi was a duly authorized signatory on both . . . **Citibank accounts**." Compl. ¶ 12.
- "As soon as possible after learning of **Citibank's actions** in denying her access to the account. . ." Compl. ¶ 14.

-10-

- "[U]pon information and belief, the account officers at **Citibank branch** where the accounts are serviced are subject to and in fact unduly influenced by other individuals without legal authority. . ." Compl. at ¶ 15.
- "Ms. Al-Rimawi's lawyer in New York **notified Citibank** in writing. . ." Compl. ¶ 16.
- "[T]he undersigned counsel sent a **letter to Citibank**. . ." Compl. ¶ 18.
- "On June 29, 2011, **Citibank responded**. . ." Compl. ¶ 19.

Plaintiffs, in fact, make no allegations whatsoever pertaining to Citigroup's participation in the alleged wrongdoing, seemingly joining Citigroup for no apparent reason at all. Citibank is the direct subsidiary of Citicorp [DE 4]. The law is clear that a parent company cannot be held liable for any alleged acts of its subsidiary, absent any allegations sufficient to pierce the corporate veil. See <u>Molenda v. Hoechst Celanese Corp.</u>, 60 F.Supp.2d 1294, 1300 (S.D. Fla. 1999), <u>aff'd,</u> 212 F.3d 600 (11th Cir. 2000) ("It is a general principal of corporate law deeply ingrained in our economic and legal systems that a 'parent corporation,' so-called because of control through ownership of another corporation's stock, is not liable for the acts of its subsidiaries") (citation omitted). "In Florida, a corporate veil will be pierced only in exceptional circumstances, such as for fraud or where the corporation is formed for some illegal purpose." <u>Id</u>. Plaintiffs never could meet that high standard under Florida law, as they never will be able to show that Defendants failed to comply with corporate formalities or are operating for an improper purpose, such as fraud. <u>See id.</u> Plaintiffs' Complaint contains no such allegations, nor could it good faith.

The Complaint in its entirety as against Citigroup must therefore be dismissed for failure to assert any plausible claim for relief. <u>Snyder v. Farnam Co., Inc.</u>, 74 UCC Rep.Serv.2d 592, *2 (D.N.J. 2011) (complaint against parent company dismissed, where it contained no factual allegations as to parent's actions).

Further confusing matters, in Count I for Constructive Trust, Plaintiffs seek a

constructive trust on "Defendant," yet fail to identify *which* Defendant.  See e.g., Compl. at ¶ 6.

Plaintiffs likewise seek an injunction in Count II, enjoining "Defendant" from transferring any

funds from the Accounts, yet fail to specify Defendant Citibank.  See id.  The same is true in

Count III for Breach of Fiduciary duty, in that Plaintiffs only allege that "Defendant," in the

singular, has breached its purported fiduciary duty, Compl. at ¶ 7.

Since the sole banking relationships at issue are between Plaintiff companies and

Citibank, as alleged by Plaintiffs, presumably the causes of action alleged are solely against

Citibank.  Yet, Plaintiffs' Complaint is vague, ambiguous, and unclear.  Therefore, and to the

extent the claims against Citigroup are not dismissed for failure to assert a plausible claim for

relief, Citigroup moves for a more definite statement, pursuant to Federal Rule of Civil

Procedure 12(e) ("A party may move for a more definite statement of a pleading to which a

responsive pleading is allowed but which is so vague or ambiguous that the party cannot

reasonably prepare a response").

### B.  THE BREACH OF FIDUCIARY DUTY CLAIMS FAIL AS A MATTER OF LAW

The claim for breach of fiduciary duty in Count III, brought by Plaintiffs Eurosillas,

Baraka, and Al-Rimawi (who ***was not a customer*** of Citibank), fails to state a claim because (1)

Al-Rimawi lacks standing to assert a claim based on the purported losses of account holders

Eurosillas and Baraka, and (2) Eurosillas and Baraka have failed to allege, and cannot allege, the

existence of a fiduciary relationship between them and Citibank.[4]

---

[4] As noted, Plaintiffs fail to specify against which Defendant they seek damages in Count I for Constructive Trust and Count III for Breach of fiduciary duty.  Assuming they are referring to Citigroup, Citigroup moves to dismiss these counts on the grounds that, among other things, Eurosillas and Baraka similarly have failed to allege, and cannot allege, the existence of any fiduciary relationship between them and Citigroup.

**Al-Rimawi Lacks Standing to Assert Claims**
**Based on the Alleged Losses of Plaintiff companies**

First, Al-Rimawi has no standing to assert any claims against Citibank.  In order to have standing in federal court, "a plaintiff must suffer an injury in fact that is both causally connected to the conduct complained of and redressable by a favorable decision of the court."  Maverick Media Group, Inc. v. Hillsborough County, Fla., 528 F.3d 817, 819 (11th Cir. 2008).  "To demonstrate standing, a party must show: (1) he has suffered, or imminently will suffer, an injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury."  In re Whittle, 449 B.R. 427, 429 (Bankr. M.D. Fla. 2011).

Al-Rimawi cannot allege she has suffered any cognizable injury arising from any relationship with Citibank because she was not Citibank's customer, and there was no direct relationship between her and Citibank.  Instead, Al-Rimawi alleges she is a shareholder and officer/director of the Plaintiff companies, which are in fact Citibank's customers.  See Compl. ¶¶ 9, 11.  Therefore, to the extent that Al-Rimawi may have suffered any purported damages, those damages do not constitute a cognizable injury that can be claimed by Citi.  See Whittle, 449 B.R. at 430 (rejecting plaintiffs' argument that by virtue of their membership in an LLC, its damages were their own personal damages).

Indeed, Plaintiff companies Baraka and Eurosillas are separate legal entities that hold property separate from the property of its shareholders, and any funds held in the Citibank Accounts were, and still are, the property of Baraka and Eurosillas, respectively, and not of Al-Rimawi, individually.  Thus, Al-Rimawi has failed to allege that she was injured individually and, thus, is not entitled to directly recover for losses suffered by Plaintiff companies.  See id.  Accordingly, Al-Rimawi has no standing to maintain any claims against Citibank.

### Al-Rimawi has Failed to Allege the Existence of a Fiduciary Relationship

Nor, has Al-Rimawi alleged any independent relationship between her and Citibank that would allow this Court to find that she had a fiduciary relationship with the bank.  As noted infra, absent special circumstances, no fiduciary relationship exists between a bank and its depositor.

Certainly, Al-Rimawi's own version of the facts shows that no special circumstances existed to convert the relationship between *her* and Citibank—that of a bank and a non-customer—into one imposing a fiduciary duty on the part of Citibank.  She also unsuccessfully attempts to assert that "Defendant" (presumably Citibank) owed her fiduciary duties of "confidentiality, loyalty and good faith."  Compl.  ¶ 33.  Yet, she has not even alleged that she was Citibank's customer—rather, she alleges that **Baraka and Eurosillas** were Citibank's customers.  See id. ¶¶ 8, 10.

Al-Rimawi's allegations are patently insufficient to establish a fiduciary duty by Citibank, or that any such duty was breached.  At best, Al-Rimawi has alleged only that she requested that Citibank suspend all activity and access to the ***Baraka and Eurosillas Accounts***.  Compl. ¶¶ 16-18.   The Complaint fails to allege that Al-Rimawi reposed any trust and confidence in Citibank on her own behalf or much less, that Citibank accepted such repose of trust and confidence.   Moreover, Al-Rimawi's attempt to rely on a purported fiduciary relationship based on her allegation that she, along with the other Defendants, "trusted in and enjoyed what [she] believed was a confidential relationship with Defendant," Compl. ¶15, also fails because the Complaint is devoid of any allegations setting forth any special circumstances that would have imposed fiduciary duties on Citibank.  See infra.

Al-Rimawi has failed to state a claim for breach of fiduciary duty against Citibank, and

her claim should be dismissed with prejudice.

**Plaintiff Companies Have Also Failed to**
**Allege the Existence of Any Fiduciary Duty**

Plaintiff companies' claim for breach of fiduciary duty fares no better.  In order to state a claim for breach of fiduciary duty "a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party."  Jaffe v. Bank of Am., N.A., 667 F.Supp.2d 1299, 1319 (S.D. Fla. 2009) aff'd, 395 Fed. Appx. 583 (11th Cir. 2010).  Stated differently, Florida law requires that a party seeking to establish the existence of a fiduciary duty, must assert "a repose of trust and confidence and an express acceptance of that repose of trust and confidence by [d]efendant."  Argonaut Dev. Group, Inc. v. SWH Funding Corp., 150 F.Supp.2d 1357, 1363 (S.D. Fla. 2001) (claim for breach of fiduciary duty fails because "there is no case law which suggests that a fiduciary duty arises between arms-length parties to a proposed contract"), aff'd 45 Fed. Appx. 884 (11th Cir. 2002).

"Generally, the relationship between a bank and its borrower is that of creditor to debtor, in which parties engage in arms-length transactions, and the bank owes no fiduciary responsibilities."  Carpenter v. Comm. Bank, 710 So. 2d 65 (Fla. 3d DCA 1998); Bldg. Educ. Corp. v. Ocean Bank, 982 So.2d 37, 41 (Fla. 3d DCA 2008) ("bank and its customers generally deal at arm's-length as creditor and debtor, and a fiduciary relationship is not presumed").

In fact, "[t]he law has generally refused to transform a banking relationship from a debtor-creditor relationship to one involving fiduciary duties."  Freeman v. Dean Witter Reynolds, Inc., 865 So.2d 543, 549 (Fla. 2d DCA 2003).  Even a longstanding relationship between a bank and a customer, which has not even been alleged here, does not create a fiduciary relationship.  Capital Bank v. MVB, Inc., 644 So. 2d 515, 521 (Fla. 3d DCA 1994)

-15-

(”[I]t is clear that [a lender's] long standing business relationship with [a borrower], without more, cannot transform the lender-borrower relationship into a fiduciary one.");  Klein v. First Edina Nat'l Bank, 196 N.W.2d 619 (Minn. 1972) (cited with approval in Capital Bank) ("The fact that plaintiff had done business with defendant for nearly 20 years could not by itself place defendant in a confidential relation to plaintiff").

Here, Baraka and Eurosillas allege nothing more than "Defendant" (presumably Citibank) owed Plaintiffs a "fiduciary duty of confidentiality, loyalty and good faith."  Compl. ¶ 33.  This is the exact type of formulaic resuscitation of the elements of the claim that the Supreme Court prohibited in Twombly, 550 U.S. at 555.  Nor, would it be sufficient for Baraka to amend its pleading once again to contend that some special relationship exists.  Vision Dev. Group of Broward County, LLC v. TMG Sunrise LLC, 411 B.R. 768, 774 (Bankr. S.D. Fla. 2009) ("Though the Debtors allege the existence of a 'special relationship' between the parties under which the Debtors espoused confidence in the Mezzanine Lenders, this in of itself does not give rise to a fiduciary duty.").  There has to be some allegations that Citibank understood that Plaintiff companies were placing a fiduciary confidence in Citibank, which Citibank accepted.

Indeed, any amendment would be futile to add such allegations because the applicable CitiBusiness® Client Manuals, [5] the terms and conditions of which Plaintiff companies expressly

---

[5] "In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." SFM Holdings v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010) (quoting Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005)); Maxcess, Inc. v. Lucent Techs., Inc., 433 F.3d 1337, 1340 (11th Cir. 2005) ("a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity"). Here, the account opening resolutions are integral to Plaintiffs' claims because they form the basis of the relationship between Citibank and Baraka and Eurosillas. See SFM, 600 F.3d at 1337 (Prime Broker Agreement was integral to the plaintiff's claims even though not explicitly referenced in the complaint because it established the fiduciary relationship, and that such "relationship-forming contracts are central to a plaintiff's claim" for breach of fiduciary duty); Schnall v. Marine Midland Bank, 225 F.3d 263 (2d. Cir. 2000) (disclosures contained in a Cardholder Agreement, monthly statements, and account history were all integral to plaintiff's claims even though they were not explicitly referenced in the complaint, and thus the defendant's inclusion of those documents did not convert the motion to dismiss to a motion for summary judgment.).

agreed to be bound by in the parties' General Deposit Resolution documents,[6] **specifically rejected that the parties had a fiduciary relationship.**  See 2003 CitiBusiness® Client Manual at 8 and 2009 CitiBusiness® Client Manual at 7, attached hereto as Exhibits B and C, respectively ("The relationship created by any deposit shall be that of debtor and creditor.  **No fiduciary or other special relationship exists between us**.") (emphasis added).  Such clauses have been upheld by courts on a motion to dismiss to negate the existence of a fiduciary relationship.  See SFM Holdings v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010) (appropriate for defendant to attach a Prime Broker Agreement to motion to dismiss because it absolved it of any fiduciary duty and was central to claim for breach of fiduciary duty).[7]

## C.  PLAINTIFFS' CLAIMS FOR CONSTRUCTIVE TRUST AND ACCOUNTING LIKEWISE FAIL TO STATE A CLAIM

Plaintiffs' similarly have failed to allege a plausible claim for relief against Citi for either constructive trust or equitable accounting.   Under Florida law, the necessary elements for imposition of a constructive trust are: (1) a promise, express or implied; (2) a transfer of the property and reliance thereon; (3) a confidential relationship; and (4) unjust enrichment.  See Bernardele v. Bonorino, 608 F. Supp. 2d 1313 (S.D. Fla. 2009).  Florida courts have stated that a confidential relationship exists "where confidence is reposed by one party and a trust accepted by the other."  Ben-Yishay v. Mastercraft Dev., LLC, 553 F. Supp. 2d 1360, 1372-73 (S.D. Fla. 2008) ("A confidential relationship may exist between a husband and wife, parent and child, guardian and ward, attorney and client, principal and agent, or partner and partner.") (citations

---

[6] See the General Deposit Resolution Documents for the Baraka and Eurosillas, Exhibits 2 and 6, respectively, to the Affidavit of Marcia Clearly, attached hereto as Exhibit A.
[7] See also Hecker v. Deere & Co., 556 F.3d 575, 583 (7th Cir. 2009) (Trust Agreement was admissible in a motion to dismiss because they directly relate to the fiduciary relationship being contested in the complaint).

omitted).

Here, Plaintiffs have altogether failed to allege any promise on the Defendants' part, a transfer of any funds, the existence of any confidential relationship, or any unjust enrichment. Their claim for constructive trust therefore fails as a matter of law.

The same is true for Plaintiffs' accounting claim.  Under Florida law, a party seeking an equitable accounting must show the existence of a fiduciary relationship or a complex transaction and must demonstrate the inadequacy of the legal remedy.  See Bernardele, 608 F. Supp. 2d 1313, 1329 (accounting claim dismissed where, among other things, Plaintiffs' failed to show existence of any fiduciary relationship); Restrepo v. Wells Fargo Bank, N.A., 09-22436-CIV, 2010 WL 374771 *3 (S.D. Fla. 2010) (complaint against bank dismissed with prejudice). As Plaintiffs have failed to allege any basis sufficient to support the existence of a fiduciary relationship, see supra, or for that matter, a "complex transaction" that took placing involving the Accounts, the claim for accounting cannot stand.  See Staup v. Wachovia Bank, N.A., 08-60359-CIV-COHN, 2008 WL 2598005 (S.D. Fla. 2008) (conclusory allegations for accounting against bank "[did] not show any of these necessary elements for the Court to grant an accounting") citing Kee v. Nat'l Reserve Life Ins. Co., 918 F.2d 1538, 1540 (11th Cir. 1990) (dismissal affirmed in the absence of any showing of a fiduciary relationship).

### D.  PLAINTIFFS HAVE NOT SUFFERED ANY IRREPARABLE HARM

In addition, Plaintiffs cannot allege that they will suffer any irreparable harm if their request for a constructive trust, declaratory judgment, and equitable accounting are denied, as these equitable claims require.  See Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto. Ins. Co., 11-20857-CV-ALTONAGA, 2011 WL 2247821 (S.D. Fla. 2011) ("It is well-settled that equitable relief is available only in the absence of an adequate

remedy at law") <u>citing</u> <u>SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A.</u>, 243

Fed.Appx. 502, 503 (11th Cir.2007) (citations omitted).  Plaintiffs in fact have admitted that

Citibank already blocked the Accounts as Plaintiffs had requested.  <u>See</u> Compl. ¶ 19, Ex. E

("This account has been blocked.  It will remain blocked until we receive notice of an agreement

between the parties as to the release of the funds, or we receive a court order").  Thus, Counts I,

IV, and V for claims in equity must be dismissed as a matter of law.

## III.   PLAINTIFFS' DEMAND FOR SECTION 57.105
     ATTORNEYS' FEES MUST BE STRICKEN

Plaintiffs prematurely and improperly seek the recovery of attorneys' fees under Section

57.105 of the Florida Statutes in connection with Count I for Constructive Trust, Count II for

Injunction (moot by virtue of DE 7, <u>see supra</u>), and Count IV for Declaratory Relief.  <u>See</u> Compl.

pp. 6-7.

> Section 57.105(4) provides:
>
> A motion by a party seeking sanctions under this section must be served but may not be filed with or presented to the court unless, within 21 days after service of the motion, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

As one Florida court observed:

> The primary purpose of section 57.105(4) is not to spring a procedural trap on the unwary so that valid claims are lost.  Rather, its function is to give a pleader a last clear chance to withdraw a frivolous claim or defense within the scope of subsection (1) or to reconsider a tactic taken primarily for the purpose of unreasonable delay under subsection (3).

<u>Vanderpol v. Frengut</u>, 932 So.2d 1251, 1253 (Fla. 4th DCA 2006) (sanctions award reversed on

for failure to comply with 21-day notice requirement).

Plaintiffs failed to serve any motion or other notice on Citi prior to demanding that this

Court award Section 57.105 sanctions.  Nor, has Plaintiffs filed any such motion with the Court.

Indeed, not only are Plaintiffs' claims substantively and technically deficient, but so too are their unwarranted and improper demand for fees.[8]  Moreover, Plaintiffs' demand for fees is premature because it was raised *before* Defendants made any claim or defense in this case.  See <u>Tradewinds Engine Serv., LLC v. IAE Intern. Aero Engines AG</u>, 10-61027-CIV, 2011 WL 900312 (S.D. Fla. 2011) ("because Defendant has not yet made any claim or defense in this case and no prevailing party has been determined, Plaintiff has not abided by the procedural safe harbor provision"), <u>adopted in part, rejected in part sub nom</u>, 10-61027-CIV, 2011 WL 900310 *3 (S.D. Fla. 2011) (motion to strike fees granted).[9]

Plaintiffs' fees demand is brought solely for the improper purpose of harassing or intimidating Defendants.  It must therefore be stricken accordingly.

## <u>CONCLUSION</u>

Citi respectfully requests that this Court dismiss all claims asserted against it in Plaintiffs' Complaint, strike Plaintiffs' request for attorneys' fees, and grant such other and further relief as is just and proper.

---

[8] <u>See</u> <u>Davidson v. Ramirez</u>, 970 So.2d 855, 857 (Fla. 3d DCA 2007) ("Because the defendant failed to comply with the requirements of subsection 57.105(4) ... the trial court erred in awarding attorney's fees under subsection 57.105(5)"); <u>City of N. Miami Beach v. Berrio</u>, 64 So.3d 713, 714 (Fla. 3d DCA 2011) ("Because the motion for attorney's fees should have been denied for noncompliance with the twenty-one day "safe harbor" provision of subsection 57.105(4), we reverse"); <u>Burgos v. Burgos</u>, 948 So.2d 918 (Fla. 4th DCA 2007) (defendant was not entitled to sanctions award, where defendant failed to serve motion on plaintiff before filing it in the trial court).

[9] <u>See also</u> <u>Concrete Mat., LLC v. Con-Way Freight, Inc.</u>, 09-80460-CIV, 2009 WL 2973265 (S.D. Fla. 2009) ("upon the filing of the Complaint, there is simply no basis for concluding that an award of attorney's fees as a sanction would be appropriate against a defendant who had not yet raised any defenses") <u>citing</u> <u>Palm Dev., Inc. v. Ridgdill & Sons, Inc.</u>, No. 2:08-cv-322-FtM-DNF, 2009 WL 513027, at * 6 (M.D.Fla. Feb.27, 2009) (request for 57.105 attorney's fees premature when no defense had yet been pled).

Case No.:  11-cv-23103-MGC

Dated:  September 22, 2011

Respectfully submitted,

**ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.**
*Counsel for Defendants*
701 Brickell Avenue, 16th Floor
Miami, Florida 33131
Tel: (305) 372-8282/
Fax: (305) 372-8202

By:  /s/ Jenelle E. La Chuisa
José I. Astigarraga, FBN 263508
Edward M. Mullins, FBN 863920
Jenelle E. La Chuisa, FBN 539988
jlachuisa@astidavis.com
emullins@astidavis.com
jia@astidavis.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 22, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and that foregoing document is being served this date on all counsel of record identified in the Service List below via transmission of a Notice of Electronic Filing generated by the CM/ECF system.

/s/ Jenelle E. La Chuisa
Jenelle E. La Chuisa

## Service List

Helena M Tetzeli, Esq.
Steve M. Weinger, Esq.
Kurzban, Kurzban, Weinger & Tetzeli, P.A.
2650 SW 27th Ave, 2nd Floor
Miami, Florida  33133
Telephone: (305) 305 444 0060
*Counsel for Plaintiffs*

#144293